#### IN THE UNITED STATES DISTRICT COURT
#### EASTERN DISTRICT OF TEXAS
#### SHERMAN DIVISION

| | | |
|---|---|---|
| **ASHLEE MYERS,** | § § | |
| *Plaintiff*, | § § | Case No._____ |
| v. | § § § | |
| **SOLAIS LIGHTING, LLC,** | § § | **JURY TRIAL DEMANDED** |
| *Defendants*. | § § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Ashlee Myers files this, her Original Petition against Defendant Solais Lighting LLC, and in support states as follows:

### I.  PARTIES:

1. Plaintiff Ashlee Myers is a former employee of the Defendant, and a resident of Collin County, Texas.

2. Defendant Solais is a Delaware corporation, headquartered in Texas. It's corporate office is located at 8655 Corporate Drive, Unit 100 Frisco, Texas 75033. It can be served by and through its registered agent: CSC, 211 E. 7TH St., Ste. 620, Austin TX 78701.

### II.  JURISDICTION & VENUE:

3. This Court has jurisdiction over Plaintiff's claims under Title VII of the Civil Rights Act pursuant to 42 U.S.C. 2000e-5(f)(3) and 28 U.S.C. §1331. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in the Sherman Division of the United States District Court for the Eastern District of Texas pursuant to 28 U.S.C. § 1391(b), as all or a substantial part of the acts

and omissions giving rise to Plaintiff's causes of action occurred in or around Collin County, Texas, which is in this District and Division.

### III.  FACTS:

5. Defendant Solais is an LED lighting manufacturer.

6. In 2013, Solais was acquired by PowerSecure International, and became part of a group called "PowerSecure Lighting."

7. Solais' President and CEO is, and at all relevant times was, Sam Newberry.

8. Plaintiff Ashlee Myers began working as a Client Service Representative for Solais Lighting Services, Inc. (a division of PowerSecure International, Inc.) in January 2019.

9. Ms. Myers had a starting salary of $40,000. After six months, her salary was raised to $48,000.  She was then promoted to Client Service Supervisor, and her salary was increased to $55,000.

10. As a Client Services Supervisor, Ms. Myers' responsibility was, among other things, to work with the Company's clients and distributors to ensure that orders and returns were taken care of properly.

11. Ms. Myers was never given any discipline, write-ups, counselings, or performance improvement warnings during her employment.

**Summer 2019:  A Female Solais Employee Reports Sam Newberry to PowerSecure H.R.**

12. In the summer of 2019, a female employee at Solais reported Sam Newberry to the H.R. department at PowerSecure.  She alleged that he had engaged in inappropriate behavior.

13. Mr. Newberry made it clear that he was angry at this employee for going to PowerSecure H.R., instead of going directly to him, and referred to her as a "dumb bitch."

**Fall 2019:  Sam Newberry Expresses His Annoyance at a Female Employee's Upcoming Maternity Leave.**

14. In the fall of 2019, a female employee at Solais announced that she would be adopting her son, and put in a request to take paid, and FMLA-protected, maternity leave.

15. She was entitled to leave under the FMLA, and she was entitled to paid leave under the company's then-existing policies.

16. Mr. Newberry approached her, in earshot of other coworkers, and questioned why she needed to take maternity leave at lal, since she wasn't going to be breastfeeding.

17. The employee bristled at Mr. Newberry's comment.  She told him that she would be taking maternity leave to be with her son, as she was entitled to do.  She then asked him to watch what he said to her about it going forward.

**Fall 2019:  Ms. Myers Complains of Sexual Harassment.**

18. In 2019, two warehouse employees, Freddy (last name unknown) and Allen (last name unknown) began directing sexually explicit comments, gestures and overtures towards Ms. Myers and other female employees at Solais.

19. In October of 2019, Ms. Myers and a coworker, Ashley Grant, met with Ulices ("Uli") Ortiz, the Warehouse Director (and Allen's and Freddy's supervisor).  They told him about the sexual comments.  Mr. Ortiz disregarded their complaints, stating: "Well, you guys *do* look good."

20. Getting no relief from Mr. Ortiz, Ms. Myers and Ms. Grant raised their complaints to Tracy Jones.  Ms. Jones was Ms. Myers' direct supervisor, and Solais' Customer Service Manager.

21. Ms. Jones instructed them to raise their complaints with PowerSecure H.R.

22. Ms. Myers did so in November 2019. She spoke with a PowerSecure H.R. employee named Carolyn. She reported the inappropriate conduct of Freddy, Allen, and Uli Ortiz to Carolyn. Ms. Myers also informed Carolyn that she had overheard Mr. Ortiz use racial slurs in the workplace, including the "N word," in regard to coworkers.

23. Other female employees besides Ms. Myers and Ms. Grant had also complained to members of Solais management about the inappropriate behavior of the men in the warehouse.

**November / December 2019:  PowerSecure Conducts an Investigation at Solais.**

24. In response to these complaints, PowerSecure conducted an investigation at Solais' Frisco warehouse location.

25. During the investigation, drug dogs were observed in the warehouse. The rumor among Solais employees was that drugs were being run in the warehouse, under Uli's watch. Uli stopped appearing at the workplace after that - the employees were not told by Solais management whether he was fired, or just placed on leave.

26. In December 2019, the PowerSecure investigation concluded.

27. Ms. Myers' allegations were substantiated.

28. Upon information and belief, PowerSecure conveyed the results of the investigation to Sam Newberry, the President and CEO of Solais.

**Dec. 2019: "Sick of Being Told What To Do," Solais Buys Itself Out From PowerSecure.**

29. In December of 2019, Solais bought themselves out from under PowerSecure.

30. The company made an announcement that it was now called "Solais Lighting Group," and was now its "own independent company."

31. According to Mr. Newberry, Solaris separated from PowerSecure because they were "sick of PowerSecure telling [Solais] what [Solais] could and couldn't do."

32. Whatever protections Ms. Myers and other female employees may have had as a result of being under the PowerSecure umbrella were now gone.

33. After the buyout, Solais did not have a dedicated H.R. person. Nimish Ghandi was Solais' CFO, and therefore oversaw some H.R. functions such as payroll. But there was not anyone at Solais whose job was dedicated to legal compliance, discrimination or harassment training, or handling employee complaints.

34. Solais could have hired someone to fill this obvious gap. It chose not to.

**Dec. 2019- Jan. 2020:   The New "Independent" Solais Provides a Dismissive & Flawed Response to the Sexual Harassment Problem.**

35. After Mr. Newberry received the information about the sexual harassment complaints, he called Ms. Grant and Ms. Myers into his office. Rather than apologize or offer to help them, he grilled them about why they went to PowerSecure H.R. instead of taking their complaints directly to him.

36. This was a repeat of the response he had when a female employee went to PowerSecure H.R. in the summer of 2019. Mr. Newberry clearly did not appreciate his employees going to H.R. with their concerns.

37. Mr. Newberry then told Ms. Myers and Ms. Grant that Solais was "just too busy" to fire Uli, Freddy or Allen, and that if they felt uncomfortable around the warehouse guys, they should just "steer clear" of them, and stay away from the warehouse.

38. Mr. Newberry recognized that Ms. Myers needed to access the warehouse to do her job, but refused to do anything to make it a safe area. Instead, he offered "walkie talkies," so that she could communicate with the warehouse without physically entering that space.

39. At another point, the men in the warehouse were being so offensive to the women in the office, that they were prohibited from coming inside of the office building at all without permission. But at no point were they actually *disciplined* or *terminated* for their actions.

40. On January 13, 2020, Tom Shanley sent out a company-wide e-mail, trying to pitch this new warehouse ban as a safety issue. But the ban was only implemented in response to the female employees' complaints.

41. In or around mid-January, Uli Ortiz — the supervisor who oversaw Freddy & Allen, who did nothing to stop them, who dismissed the women's complaints of harassment, and who apparently oversaw a warehouse where drug deliveries were taking place -- was brought back to work at Solais, with a six-figure salary.

42. Nothing was ever done to hold Uli accountable for the environment he had fostered in the warehouse, or for his inappropriate comments to the women in the office, or for the other unlawful activities in the warehouse.

**Dec. 2019- Jan. 2020:  Solais Conducts Layoffs; Fires the Woman on Maternity Leave.**

43. Around the time of the buyout, Solais fired Tracy Jones (Ms. Myers' supervisor).

44. Solais also fired the female employee who had pushed back against Sam Newberry's offensive comments about her maternity leave. (see Paragraphs 14-17, above). That woman was actually *on* maternity leave when Solais fired her.

45. Freddy and Allen were also fired during this time.

46. Mr. Newberry told Ms. Myers that "they made us get rid of a bunch of people in order for the money to be right for the buyout." In other words, Freddy & Allen were fired due to the financial concerns around the PowerSecure buyout - *not* because of their inappropriate behavior. Uli was not fired.

**Early March 2020:  Myers Discloses that She is Pregnant.**

47. In late February or early March of 2020, Ms. Myers informed Nimish Ghandi that she was pregnant. She asked that he keep that information to himself.

48. Ashlee Grant also announced her pregnancy around this same time, as did a third employee, Kristin Tilley.

49. Ms. Myers was uncertain about openly disclosing her pregnancy. She wasn't sure whether Solais employees were still entitled to maternity leave after the buyout, and she was aware of Mr. Newberry's hostility toward employees who took maternity leave, and toward working mothers, including:

   a. Mr. Newberry told another employee "not to hire a bunch of young girls because they were all going to get pregnant and go on leave."

   b. Mr. Newberry referred to maternity leave as "vacation," and stated that female employees were unable to perform their jobs correctly after they became pregnant.

   c. Mr. Newberry dismissively referred to Solais' nursing room as a "miking room."

   d. Mr. Newberry was openly hostile toward another female employee's need for maternity leave, stating that she did not need to take maternity leave because she wasn't breastfeeding.

   e. That woman was subsequently fired while on her maternity leave.

   f. A year or so prior, when another female employee had a baby, Mr. Newberry questioned her ability to multitask as a working mom, and told her that "if [she] couldn't handle it, maybe [she] should just stay home with her kid."

    g.    Around March of 2020, Mr. Newberry asked Nimish Ghandi, in the middle of the office where everyone could hear: "why do you keep hiring all these young girls who can get pregnant?"

50.    Ms. Myers went to her boss about this last comment. She said that Mr. Newberry's comments were making her uncomfortable. Ms. Myers' boss acted surprised, but did not actually do anything to address it.

51.    Ms. Myers also reported the "milking room" comment to Nimish Ghandi. He apologized, but also did nothing to address the problem.

**Late March 2020:   Solais Fires Ms. Myers & Another Pregnant Employee.**

52.    On March 23, 20202 -- a few weeks after disclosing her pregnancy, a few months after filing a sexual harassment complaint, and a few days after complaining to H.R. about Mr. Newberry's latest comments -- Ms. Myers was terminated.

53.    The same day, Ms. Grant (also pregnant) was also terminated.

54.    The third pregnant employee (Kristin Tilley) was told that she was not being fired, but that this was just because she was the only person in her role.

55.    Two male employees were also fired at this time - but they had been "on the chopping block" for performance, long before COVID had come up. This could not be said of Ms. Myers or Ms. Grant - there was no performance based reason for their terminations.

**Solais' Explanations For the Termination Is Unworthy of Credence:**

56.    Ms. Myers was told that she was being fired due to "financial concerns." Similarly, Ms. Grant was told that she was terminated because of "financial reasons related to COVID."

57. On March 23, 2020 (the same day Ms. Myers was fired), Solais posted a video to Facebook stating: "Everything's going to be just fine. Our industry is strong. We're smart. We're resilient. We're definitely going to grow from this….the show must go on."

58. That same post indicated that the company thought the COVID crisis would be going on for "the next few weeks."

59. According to Solais' Website as of April 13, 2020, "COVID Can't Hold Us back," and in 2020, Solais would introduce several new product lines.

60. Solais told the EEOC that it made this decision in "March of 2020 with the onset of COVID-19, plummeting sales and a nationwide shutdown of businesses." But:

- A. There was no "nationwide shutdown of businesses" in mid-March 2020. The first state to issue a stay-at-home order was California, on March 19th. Dallas County closed a small subset of retail businesses on March 18, 2020, and Collin County (where Solais is located) hadn't issued any closure orders at the time Ms. Myers was fired.
- B. At Solais, a dip in sales numbers was normal and expected in Q1, because their suppliers were often shut down in February for the Chinese New Year;
- C. At the time when Solais fired Ms. Myers, the news around COVID was just beginning develop - there were no "plummeting sales" resulting from COVID at that early stage of the pandemic; and
- D. Solais' public statements in March 2020 reflect their apparent belief that the COVID crisis would continue for only "a few weeks" - i.e., at that time, Solais did not appear to believe that COVID would pose a long-term problem.

61. Solais got a PPP loan for $734,700.00 in April 2020.

62. The express purpose of the PPP loan program was to help financially-stressed businesses keep their workers employed, despite any effects of COVID on business.[1]

---

[1] https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program

63. After Solais received its PPP funds, it wrote a letter to Ms. Myers and Ms. Grant, offering to put them back on payroll - but *only* for 8 weeks (i.e., the exact time that Solais would need to claim their headcount as "maintained," in order to claim PPP loan forgiveness). They *would not* be allowed to return permanently, or to return throughout the duration of their pregnancies, or to return after giving birth.

64. In short, the company's purported reason for Ms. Myers' termination (serious financial problems related to COVID) is false and unworthy of credence. The company could have kept Ms. Myers employed. To the extent that it truly experienced an unanticipated, significant financial downturn in March 2020, it got a substantial PPP loan to address that concern. The COVID crisis simply provided the company with a convenient excuse to get rid of the workers that it already wanted to get rid of anyway: two sales employees with a long history of performance problems, and two women who would soon need to take maternity leave.

## IV.   CAUSES OF ACTION

### COUNT ONE:  DISCRIMINATION
### (TEX. LAB. CODE § 21.051; 21.106 and 29 USC § 2000e)

65. Plaintiff realleges and incorporates by reference all of the facts set forth in the above sections of this Complaint.

66. Solais fired Ms. Myers because of her gender - specifically, because of her status as a pregnant woman who would soon require maternity leave and be a working mother.

67. Plaintiff requests that she be awarded all damages to which she is entitled, including but not limited to: all lost wages and employee benefits, punitive damages, pre-judgment interest, and post-judgment interest.

68. Plaintiff requests reinstatement (or adequate front pay in lieu of reinstatement), and any additional equitable or other relief to which she may be entitled.

69. Plaintiff also seeks recovery of her reasonable attorney's fees and court costs.

**COUNT TWO:  RETALIATION**
**(TEX. LAB. CODE § 21.055 and 29 USC § 2000e)**

70. Plaintiff realleges and incorporates by reference all of the facts set forth in the above sections of this Complaint.

71. Solais fired Ms. Myers because she opposed, and complained about, acts that she reasonably believed to be unlawful - specifically, because she: (a) complained to PowerSecure H.R. about in November 2019; and (b) complained about Mr. Newberry's remarks about pregnant employees in March 2020.

72. Plaintiff requests that she be awarded all damages to which she is entitled, including but not limited to: all lost wages and employee benefits, punitive damages, pre-judgment interest, and post-judgment interest.

73. Plaintiff requests reinstatement (or adequate front pay in lieu of reinstatement), and any additional equitable or other relief to which she may be entitled.

74. Plaintiff also seeks recovery of her reasonable attorney's fees and court costs.

**COUNT THREE:**
**FMLA INTERFERENCE**

75. Plaintiff realleges and incorporates by reference all of the facts set forth in the above sections of this Complaint.

76. Defendant interfered with Plaintiff's FMLA rights under 29 U.S.C. 2615(a)(1) by terminating her employment to prevent her from taking FMLA-protected maternity leave.

77. Plaintiff requests that she be awarded all damages to which she is entitled, as outlined in 29 U.S.C. § 2617, including but not limited to: all lost wages and employee benefits, statutory liquidated damages, pre-judgment interest, and post-judgment interest.

78. Plaintiff also requests reinstatement (or adequate front pay in lieu of reinstatement), injunctive relief to prevent further FMLA violations, and any additional equitable or other relief to which she may be entitled.

79. Plaintiff also seeks recovery of her reasonable attorney's fees and court costs.

## V.  JURY DEMAND

80. Plaintiff requests trial by jury on all claims.

## VI. PRAYER FOR RELIEF

Wherefore, Plaintiff requests that on final trial they obtain judgment against Defendants as follows:

a. Judgment against Defendants for actual damages, including lost wages and benefits (both back pay and front pay), the sum to be determined at time of trial;

b. Judgment against Defendants for compensatory damages in the maximum amount allowed by law;

c. Judgment against Defendants for punitive damages in the maximum amount allowed under law;

d. An order that Defendants take such other and further actions as may be necessary to redress Defendants' violation of the TCHRA and TITLE VII;

e. Pre-judgment and post-judgment interest at the maximum amount allowed by law;

f. Costs of suit, including reasonable attorney's fees; and

g. The award of such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

*Respectfully Submitted,*

Tremain Artaza PLLC

By: */s/ Ashley Tremain*
    Ashley E. Tremain
    State Bar No. 24066209
    Carmen Artaza
    State Bar No. 24055114

13140 Coit Road, Ste. 104
Dallas, Texas 75240
Telephone: (469)-573-0229
Facsimile: (214)-254-4941
ashley@tremainartaza.com

**COUNSEL FOR PLAINTIFF ASHLEE MYERS**